IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KURT LINNEMANN                    *

          Plaintiff              *

          vs.                    *    CIVIL ACTION NO. MJG-12-2021

CITY OF ABERDEEN, et al.,        *

                                 *

          Defendants             *
*     *     *     *     *     *     *     *     *

MEMORANDUM AND ORDER RE: MOTION TO DISMISS/SUMMARY JUDGMENT

The Court has before it Defendants City of Aberdeen's and
Cornis (a.k.a. "J.R.") Adkins' Motion to Dismiss or,
Alternatively, for Summary Judgment [Document 8], and the
materials submitted relating thereto.  The Court finds a hearing
unnecessary.

I.   BACKGROUND

On the morning of Friday, November 18, 2011, Plaintiff Kurt
Linnemann ("Linnemann" or "Plaintiff") unloaded anti-abortion
signs from his vehicle "onto public property adjacent to the
sidewalk in front of [Aberdeen High School]."  Compl. ¶ 16-17.
Linnemann then had an interaction with Defendant Cornis Adkins
("Officer Adkins"), a City of Aberdeen police officer, based
upon which he filed the instant lawsuit.  In the five Count
Amended Complaint [Document 5], Linnemann presents the following
claims against Officer Adkins and the City of Aberdeen:

| Count I:   | Violation of First Amendment Rights (42 U.S.C. § 1983) against Officer Adkins; |
|------------|--------------------------------------------------------------------------------|
| Count II:  | First Amendment Retaliation (42 U.S.C. § 1983) against Officer Adkins |
| Count III: | Fourth Amendment - Unreasonable Seizure (42 U.S.C. § 1983) against Officer Adkins; |
| Count IV:  | Municipal Liability - Failure to Train (42 U.S.C. § 1983 against the City of Aberdeen; and |
| Count V:   | Violation of the Maryland Declaration of Rights against Officer Adkins and the City of Aberdeen. |

Linnemann seeks compensatory and punitive damages, a
declaratory judgment that the Defendants' conduct was unlawful
and injunctive relief barring Defendants from adopting or
following any policy "authorizing confiscation and destruction
of posters and signs intended for First Amendment-protected
advocacy and assembly in public forums in a lawful manner", as
well as compensatory and punitive damages.

By the instant motion, Defendants move for dismissal of all
claims in the Complaint pursuant to Rule[1] 12(b)(6) or
alternatively for summary judgment under Rule 56.

---

[1]    All "Rule" references herein are to the Federal Rules of
Civil Procedure.

II.  APPLICABLE STANDARDS

    A.  Dismissal Standard

    A motion to dismiss filed pursuant to Rule 12(b)(6) tests
the legal sufficiency of a complaint.  A complaint need only
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief, in order to give the
defendant fair notice of what the ... claim is and the grounds
upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,
555 (2007) (citations omitted).  When evaluating a 12(b)(6)
motion to dismiss, a plaintiff's well-pleaded allegations are
accepted as true and the complaint is viewed in the light most
favorable to the plaintiff.  However, conclusory statements or a
"formulaic recitation of the elements of a cause of action" will
not suffice.  Id.  A complaint must allege sufficient facts to
"cross 'the line between possibility and plausibility of
entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186,
193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

    Inquiry into whether a complaint states a plausible claim
is "a context-specific task that requires the reviewing court to
draw on its judicial experience and common sense."  Id.  Thus,
if the well-pleaded facts contained within a complaint "do not
permit the court to infer more than the mere possibility of
misconduct, the complaint has alleged – but it has not shown –
that the pleader is entitled to relief."  Id. (quoting Ashcroft

v. Iqbal, 556 U.S. 662, 679 (2009)) (internal quotation marks omitted).

B.  Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings and supporting documents show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the

4

finder of fact could reasonably find for him or her." <u>Mackey v.</u>
<u>Shalala</u>, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

Summary judgment should not be granted "where the nonmoving
party has not had the opportunity to discover information that
is essential to his opposition." <u>Anderson</u>, 477 U.S. at 250 n. 5.
In such a case, the court may deny summary judgment under Rule
56(d) if the nonmovant shows through affidavits that it could
not properly oppose a motion for summary judgment without a
chance to conduct discovery.


III. <u>DISCUSSION</u>

A. <u>Pertinent Events</u>[2]

On Friday, November 18, 2011, Linnemann drove to Aberdeen
High School in Aberdeen, Maryland, planning to display anti-
abortion signs that were in his car and protest against
abortion. Upon his arrival, Linnemann parked his vehicle at the
"entrance/exit of the high school, basically half on the street

---

[2] The "facts" stated herein are expressed as presented by
Linnemann, except as otherwise indicated. In support of their
motion, Defendants submitted the affidavit of Officer Adkins.
In opposition, Plaintiff submitted his own affidavit.
Consideration of the affidavits would be appropriate in
connection with a summary judgment determination. However, as
discussed herein, to the extent the factual allegations in the
Complaint are sufficient to support a plausible claim for
relief, the Court finds motions for summary judgment premature
due to the absence of discovery.

and half on the entrance/exit lane", but unloaded his materials onto a public sidewalk in front of Aberdeen High School.[3]  Pl.'s Aff. [Document 9-1] ¶ 5.  Officer Adkins approached and advised Linnemann that he was on private property.  Linnemann responded that he was "on a public right-of-way adjacent to the public sidewalk."  Compl. ¶ 18.  Linnemann continued to unload his protest materials while Officer Adkins observed.  Id. ¶ 17-18.  When he finished unloading, Linnemann informed Adkins that he was going to park his vehicle and proceeded to do so several hundred feet away from the unloaded protest materials.  Id. ¶ 19.  As Linnemann walked back to his materials, Linnemann claims that Officer Adkins took one of the anti-abortion signs and "hurled" it into the street.[4]  Id. ¶ 20.  Linnemann yelled to Officer Adkins not to touch his stuff.[5]  Pl.'s Aff. ¶ 9.

When Linnemann returned to the spot where he had left his materials, "all of them, plus appurtenant sandbags and support poles, [were] lying in the adjacent public street."  Compl ¶ 21.

---

[3]  Officer Adkins disagrees and declares that when he approached Linnemann, the vehicle was parked in one of the High School's parking lots and Linnemann was unloading his protest materials onto school property.  Adkins' Aff. [Document 8-2] ¶ 3-6.

[4]  Officer Adkins disagrees and states that he merely relocated some of Linnemann's protest materials off of school property, "a short distance away." Id. ¶ 6.

[5]  Officer Adkins states that when Linnemann yelled at him not to touch his stuff he "simply stopped helping him by not moving anything else."  Id. ¶ 6.

At "this point Officer Adkins began ranting and raving about how wrong we [Linnemann and another protestor] were and angrily telling us that what we were doing was ugly, inappropriate and we should not be there."  Pl.'s Aff. ¶ 10.  Linnemann then retrieved his protest materials from the street and assembled them in the same spot where he had previously unloaded them.[6]  Pl.'s Aff. ¶ 13.

At some point, Linnemann asked Officer Adkins to call his supervisor in regard to his conduct.  Presumably, Officer Adkins did so and, in response, Corporal Swain, other City of Aberdeen police officers, and the principal of Aberdeen High School showed up.  They spoke with each other near Linnemann's protest materials for about thirty minutes, and then departed.  Compl. ¶ 23-24.  After this "deliberation", Linnemann held his protest without interruption or interference from the Aberdeen Police Department or any other state actor.

At about 8:00 AM (presumably after the protest) Linnemann, at the suggestion of Corporal Swain, went to the Aberdeen Police Department headquarters and filed a complaint against Officer Adkins.  Id. ¶ 25.

---

[6]   Officer Adkins disagrees and states that he observed Linnemann move "the rest of the things up the corner", set-up the protest materials, and stand "at the school's entrance with signs."  Adkins' Aff. ¶¶ 7, 10.

B.    Factual Disputes

The parties present versions of the events at issue that, in certain respects, are conflicting.  The issues of fact include:

1.    Whether Linnemann unloaded his anti-abortion protest materials onto a public sidewalk or school property;

2.    Whether Officer Adkins relocated (to the street) some or all of Linnemann's anti-abortion protest materials from a public sidewalk or school property;

3.    Whether Officer Adkins forcibly hurled Linnemann's anti-abortion protest materials into the street; and

4.    Whether Linnemann moved his protest materials from the street back to their original spot or to a short distance away.

However, Linnemann has not pleaded a plausible cause of action as to most of the claims presented.  As to those claims for which he has pleaded facts adequate to avoid dismissal, summary judgment motions are premature due to the absence of any discovery.[7]

---

[7]    Linnemann's counsel has filed a Rule 56(d) declaration claiming discovery is "necessary [to] develop an evidentiary basis for refuting the defendants' version of what happened near Aberdeen High School on November 18, 2011."  [Document 9-2] ¶ 5. Inasmuch as the Court is not granting Defendants summary judgment on any claim, Plaintiff shall have discovery on his adequately pleaded claims in due course.

C.   <u>The Unreasonable Seizure Claims (Counts III and V)</u>

Linnemann alleges that Officer Adkins violated his rights under the Fourth Amendment of the Federal Constitution and Article 26 of the Maryland Declaration of Rights by taking his protest materials and throwing them into the street without probable cause.  Defendants contend dismissal is necessary because Officer Adkins movement of Plaintiff's protest materials into the street did not constitute a "seizure" within the meaning of the Fourth Amendment and Article 26.[8]

The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and the seizure of a person's effects without probable cause is unreasonable.  U.S. Const. Amend. IV; <u>Brooks v. City of Winston-Salem</u>, 85 F.3d 178, 183 (4th Cir. 1996).  A seizure of property within the meaning of the Fourth Amendment occurs whenever "there is some meaningful

_____

[8]    Article 26 of the Maryland Declaration of Rights is generally construed "in <u>pari materia</u> with the prohibitions against unreasonable searches and seizures embodied in the Fourth Amendment of the federal constitution." <u>Solis v. Prince George's Cnty.</u>, 153 F. Supp. 2d 793, 803 (D. Md. 2001); <u>Liichow v. State</u>, 419 A.2d 1041, 1044 n.1 (Md. 1980);  <u>see also</u> <u>Purnell v. State</u>, 911 A.2d 867, 882 (Md. Ct. Spec. App. 2006) ("Maryland does not favor a construction of Article 26 that is not in <u>pari materia</u> with the Fourth Amendment.").  The parties present no argument to the contrary.  Accordingly, the Court's Memorandum will address the issue of unlawful seizure without distinction between the Maryland Declaration of Rights and the Federal Constitution.

interference with an individual's possessory interests in that
property." United States v. Jacobsen*, 466 U.S. 109, 113 (1984);
Soldal v. Cook Cnty., 506 U.S. 56, 61 (1992) (concluding seizure
occurred where, during eviction of trailer from trailer park,
trailer was pulled from moorings in ground, towed onto the
street, and later hauled to a neighboring property).  The
destruction or complete deprivation of one's personal property
plainly constitutes a seizure subject to constitutional
protection.  Altman v. City of High Point, N.C., 330 F.3d 194,
205 (4th Cir. 2003) (finding permanent deprivation and thus
seizure of effects where animal control shot and killed
plaintiff's dogs).  The Fourth Amendment also protects against
"temporary or partial seizures." Presley v. City Of
Charlottesville, 464 F.3d 480, 487 (4th Cir. 2006) (citing
cases).  Yet, not every police interaction or interference with
a private person's property interests amounts to a
Constitutionally protected seizure.  See Wilson v. Layne, 141
F.3d 111, 115 (4th Cir. 1998) aff'd, 526 U.S. 603 (1999)
(concluding photographs taken by reporters during execution of
arrest warrant in a residence did not constitute a seizure
because there was no meaningful interference with individual's
possessory interests in the property).

The Complaint contains allegations that Officer Adkins observed Linnemann unload protest materials from his vehicle, and, when Linnemann departed to park his vehicle Officer Adkins hurled Linnemann's[9] anti-abortion protest materials into the street. The Complaint states that upon his return from parking, Linnemann found the materials lying in the street. But, Plaintiff does not allege that Officer Adkins or any other public official sought to exercise any control over the materials after they landed in the street, attempted to prevent Linnemann from moving the materials out of the street when he returned from parking his vehicle a few hundred feet away, deprived Linnemann of using the materials for any appreciable amount of time, or damaged the materials in any respect. See United States v. Kelly, 276 F. App'x 261, 265 (4th Cir. 2007) (unpublished) (concluding police officer did not seize gun during search warrant execution by taking the gun to another officer on the scene for identification purposes); United States v. Garces, 133 F.3d 70, 74 (D.C. Cir. 1998). In sum, the Complaint does not present allegations of facts sufficient to present a plausible claim that there was a meaningful

---

[9]    The Complaint does not explicitly allege the protest materials belonged to Linnemann or that he had a possessory interest in such materials. However, the Complaint does contain allegations that reference the materials as "his", which the Court considers sufficient to raise the inference of Plaintiff's possessory interest therein.

interference with Linnemann's possessory interests in the
protest materials so as to constitute a seizure within the scope
of the Fourth Amendment.

Accordingly, all claims in Count III and all claims in
Count V asserted under Article 26 of the Maryland Declaration of
Rights shall be dismissed.

D.    Free Speech Claims (Counts I, II, and V)

Linnemann alleges that Officer Adkins violated his rights
under the First Amendment of the Federal Constitution (Counts I
and II) and Article 40 of the Maryland Declaration of Rights
(Count V) by removing his anti-abortion protest materials from a
public sidewalk and "hurling" them into the street.  Linnemann
presents claims for violation of his affirmative right to free
speech and unconstitutional retaliation for the exercise of his
free speech rights.[10]

_____

[10]    Article 40 of the Maryland Declaration of Rights is
generally construed in pari materia with the First Amendment of
the Federal Constitution. Nefedro v. Montgomery Cnty., 996 A.2d
850, 855 n. 5 (Md. 2010); WBAL-TV Div., Hearst Corp. v. State,
477 A.2d 776, 781 n.4 (Md. 1984).  The Court has not located any
Maryland case law specifically addressing the elements of an
Article 40 speech retaliation claim.  See Brunson v. Howard
Cnty. Bd. of Educ., CIV. WDQ-10-3045, 2013 WL 388985, at *5 (D.
Md. Jan. 30, 2013).  However, it appears Maryland has recognized
speech retaliation claims in the public employment discharge
context.  See McIntyre v. Guild, Inc., 659 A.2d 398, 406 (Md.
Ct. Spec. App. 1995) (evaluating Article 40 and First Amendment
employment retaliation claim without distinction).  In any

Defendants contend dismissal on all the free speech claims is appropriate because preparing for a protest is not constitutionally protected speech activity and, in any event, Linnemann ultimately conducted his protected speech activities "adjacent to, but not on the grounds of, a public school." Defs.' Mot. to Dismiss [Document 8-1] at 7-10.

1. <u>Legal Principles</u>

The First Amendment, as incorporated with regard to the states by the Fourteenth Amendment, protects, among other things, speech and other expressive activity from government interference or restriction in public places. <u>See</u> <u>Nat'l Socialist White People's Party v. Ringers</u>, 473 F.2d 1010, 1015 (4th Cir. 1973). In addition to safeguarding a person's affirmative right to speak, the First Amendment also protects "the right to be free from retaliation by a public official for the exercise of that right." <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685 (4th Cir. 2000).

"The threshold question in any First Amendment challenge, of course, is whether any protected First Amendment right is involved." <u>Willis v. Town Of Marshall, N.C.</u>, 426 F.3d 251, 257 (4th Cir. 2005). With respect to an affirmative free speech

_____

event, Count V does not contain an express claim under the
Maryland Declaration of Rights for speech retaliation. As a
result, the Court need not address such issues.

claim, if the plaintiff has engaged in "protected speech", the court must next identify the nature of the forum involved "because the extent to which the Government may limit access depends on whether the forum is public or nonpublic.'"  See Goulart v. Meadows, 345 F.3d 239, 246 (4th Cir. 2003) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 798 (1985)).  The court must then assess whether the justification for interference with the plaintiff's free speech rights in the relevant forum satisfies the requisite standard. Id.

Concerning First Amendment retaliation claims, a plaintiff must establish the following three elements to demonstrate a violation: "(1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct."  Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).


2.  Pre-Speech Activity

There is no doubt that that Linnemann's anti-abortion protest, which included a demonstration of anti-abortion signs, is an activity protected by the First Amendment.  See generally

14

Schenck v. Pro-Choice Network Of W. New York, 519 U.S. 357, 377 (1997); see also Am. Legion Post 7 v. City of Durham, 239 F.3d 601, 606 (4th Cir. 2001) ("'[c]ommunication by signs and posters is virtually pure speech'") (citation omitted).

Defendants take the position that Linnemann is entitled to no First Amendment protection because Officer Adkins threw his protest materials into the street while Linnemann was merely preparing to engage in protected speech. The Court does not agree.

The Supreme Court has recognized that "pure speech" is "entitled to comprehensive protection under the First Amendment." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506-08 (1969) (concluding wearing of an armband in order to express a certain view is a symbolic act protected by the free speech clause of the First Amendment). However, the protections of the First Amendment are not activated only at the exact moment when the mouth opens to voice a message or a sign is thrust into the air for public view. First Amendment free speech safeguards are broad enough to encompass state action that stands as an obstacle to a person's ability to engage in the protected speech activity itself. See United States v. Rosen, 445 F. Supp. 2d 602, 640 (E.D. Va. 2006) amended, 1:05CR225, 2006 WL 5049154 (E.D. Va. Aug. 16, 2006) and aff'd,

15

557 F.3d 192 (4th Cir. 2009) ("Like the right to free speech,
the right to petition the government protects not only the act
of petitioning itself, but acts preparatory to such
petitioning.").  For instance, the Supreme Court has recognized
significant First Amendment protections against prior restraints
on speech.  See Se. Promotions, Ltd. v. Conrad, 420 U.S. 546,
559 (1975) (explaining a system of prior restraint on speech is
presumptively unconstitutional unless it takes place under
procedural safeguards).  The First Amendment may also come into
play where the government takes action that burdens or inhibits
the exercise of free speech rights, even if the government has
not directly restricted speech.  See generally Am. Commc'ns
Ass'n, C.I.O., v. Douds, 339 U.S. 382, 399 (1950) (recognizing
regulation that results in indirect abridgment of speech may run
afoul of the First Amendment).

    Because the anti-abortion protest ultimately conducted by
Linnemann is plainly protected free speech activity under the
First Amendment, it follows that the First Amendment protects
that activity from unjustified governmental interference,
including interference that occurs through obstructing the
protester's ability to setup up signs and other materials that
plainly relate to an anti-abortion protest about to be held on a

public sidewalk.[11] Simply because Linnemann had not yet officially begun his protest does not mean the First Amendment provided no shield to him. Indeed, using Defendants' rationale, the First Amendment would provide no limitations on the conduct of state actors until the exact moment when a protest can be said to transition from setup to actual performing.

Therefore, the Court rejects Defendants' position that Linnemann's First Amendment rights could not have been violated simply because he alleges no wrongful action taking place after commencement of the protest.

### 3. Affirmative Violation of Free Speech Rights

Defendants next contend that even if the First Amendment applies, Officer Adkins did not violate Linnemann's affirmative free speech rights because Linnemann unloaded his materials onto school property and, in any event, Linnemann's speech was not restricted because the protest ultimately occurred without government interference.

When the government restricts private speech on government property, the scrutiny of the government's action depends on the type of forum involved. See Goulart v. Meadows, 345 F.3d 239, 248 (4th Cir. 2003). As summarized by the Fourth Circuit:

---

[11] Based on the allegations in the Complaint, the nature of the protest materials would have been apparent to any onlooker.

> [T]he traditional public forum, is a place
> that by long tradition or by government fiat
> ha[s] been devoted to assembly and debate.
> The government may not prohibit all
> expressive activity in a traditional public
> forum, and content-based restrictions on
> speech are valid only if they are narrowly
> tailored to serve a compelling state
> interest. . . . [T]he nonpublic forum, is
> not open by tradition or designation to the
> public for expressive activity. The
> government can restrict access to a
> nonpublic forum as long as the restrictions
> are reasonable and [are] not an effort to
> suppress expression merely because public
> officials oppose the speaker's view.

Id. at 248-49 (internal citations and quotations omitted). The Supreme Court has remarked that public schools generally do not exhibit the attributes of a traditional public forum, but categorization in any case depends on the particular public school at issue. See Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 267 (1988). Public sidewalks, on the other hand, are the quintessential traditional public forum. See United States v. Grace, 461 U.S. 171, 180 (1983).

For present purposes, Linnemann alleges, and the Court assumes, that the subject materials were not unloaded onto private property. However, the Complaint does not allege facts that present a plausible claim that Officer Adkins or any other state actor prevented or significantly delayed Linnemann in proceeding to hold his anti-abortion protest at the location of Linnemann's choice. See Storm v. Town of Woodstock, N.Y., 944

F. Supp. 139, 144 (N.D.N.Y. 1996) (holding local law that limited parking near outdoor space used for religious purposes did not violate First Amendment where the law did not prevent or burden plaintiff from engaging in protected forms of speech). The Court concludes, therefore, that Linnemann has failed to plead an adequate claim for interference with his free speech rights.

Accordingly, all claims in Count I and all claims in Count V asserted under Article 40 of the Maryland Declaration of Rights shall be dismissed

### 4. Retaliation Claim

The dismissal of Linnemann's affirmative free speech claims is not determinative of his retaliation claim. "First Amendment retaliation is actionable because 'retaliatory actions may tend to chill individuals' exercise of constitutional rights.'" Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (quoting ACLU of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993)). Thus, a First Amendment retaliation claim is viable even if the plaintiff is not actually deprived of a First Amendment right where "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights." Id.

To plead a viable First Amendment retaliation claim, the
Complaint must contain sufficient factual allegations that (1)
Linnemann engaged in protected First Amendment activity, (2)
Officer Adkins took some action that adversely affected his
First Amendment rights, and (3) there was a causal relationship
between his protected activity and Officer Adkins' conduct. See
Constantine, 411 F.3d at 499; Blankenship v. Manchin, 471 F.3d
523, 528 (4th Cir. 2006) (finding viable retaliation claim where
governor's remarks plausibly amounted to a threat to exercise
greater regulatory scrutiny over plaintiff in retaliation for
plaintiff's public opposition to governor's bond proposal). At
the 12(b)(6) dismissal stage, the Court finds the factual
allegations in the Complaint that Officer Adkins hurled
Linnemann's protest materials from a public sidewalk into the
street sufficient to state a plausible First Amendment
retaliation claim.

As discussed supra, the Complaint contains sufficient
factual allegations that Linnemann's pre-speech activities are
protected by the First Amendment. With respect to the second
element, "a plaintiff suffers adverse action if the defendant's
allegedly retaliatory conduct would likely deter 'a person of
ordinary firmness' from the exercise of First Amendment rights."
Constantine, 411 F.3d at 500; The Baltimore Sun Co. v. Ehrlich,

437 F.3d 410, 416-17 (4th Cir. 2006) (recognizing certain limitations on retaliation claims in order to "balance the government's speech interests with the plaintiff's speech interests"). As the Fourth Circuit has explained "[w]hile the plaintiff's actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity, it is not dispositive." Id. Whether alleged retaliatory conduct would have a chilling effect on protected speech is "a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000).

The Complaint contains allegations that Officer Adkins falsely accused Linnemann of parking in an improper location. It is also alleged that when Linnemann merely placed, anti-abortion protest materials on a public sidewalk and left to park his vehicle, Officer Adkins hurled the materials into the street.[12] Officer Adkins' alleged actions went beyond mere speech as an expression of hostility to Linnemann's exercise of

---

[12] In his affidavit, but not in his Complaint, Linnemann declares that when he returned to find his protest materials in the street, "Officer Adkins began ranting and raving about how wrong we were and angrily telling us that what we were doing was ugly, inappropriate and we should not be there." Pl.'s Aff. ¶ 10.

his free speech rights.  Cf. McGraw, 202 F.3d at 687 (explaining

when the alleged retaliatory act is in the form of speech it is

not actionable unless "a threat, coercion, or intimidation

intimating that punishment, sanction, or adverse regulatory

action will imminently follow").

    Defendants assert Officer Adkins' conduct would not likely

deter any reasonable person from engaging in similar speech and

the Plaintiff's response to Officer Adkins conduct, telling him

to desist and continuing with the protest set-up, is some

evidence of the lack of any chilling effect.  Under the 12(b)(6)

dismissal standard, the Court is required to draw all reasonable

inferences in favor of Linnemann as the non-movant and to decide

only if, with the benefit of those inferences, he has expressed

a claim that is at least plausible.  In other words, the Court

must view the pertinent facts and circumstances in regard to the

adverse action element as much in favor of Plaintiff as

reasonably possible.  On this standard, the Court finds that

Linnemann has alleged facts presenting a plausible adverse

action claim.  That is, that a person of ordinary fitness would

likely refrain from conducting an anti-abortion protest if he or

she thought that upon parking in a legal location with anti-

abortion materials he or she would be falsely accused of parking

in an illegal location and that after peacefully unloading the

materials onto a public sidewalk in preparation for the protest,
a police officer would hurl those materials into a public
street.   See generally Richter v. Maryland, 590 F. Supp. 2d
730, 734 (D. Md. 2008) aff'd sub nom. Richter v. Beatty, 417 F.
App'x 308 (4th Cir. 2011) (finding plaintiff submitted
sufficient evidence of adverse action where person of ordinary
fitness would likely "refrain from putting political speech on
their cars if they thought they would suffer immediate
retaliation in the form of a repair order" issued by police).

     The third element of Plaintiff's retaliation claim requires
a causal relationship between Linnemann's protected activity and
Officer Adkins' alleged retaliatory conduct in throwing the
protest materials into the street.   A causal connection requires
the defendant was aware of the plaintiff's engaging in protected
activity and "some degree of temporal proximity to suggest a
causal connection."  Constantine, 411 F.3d at 501.   Here, there
is a plausible claim that Officer Adkins was aware of
Linnemann's protected activity.   The materials thrown into the
street by Officer Adkins were signs and poles that depicted pro-
life messages and pictures.   Also, the Complaint contains
allegations that Linnemann and Officer Adkins conversed over
whether Plaintiff had unloaded the materials onto a public
sidewalk or school property, which leads to the reasonable

inference that Officer Adkins knew or should have known
Linnemann intended to conduct a protest or some sort of
demonstration.  Lastly, Officer Adkins allegedly threw the
protest materials into the street as soon as Linnemann left to
park his car.  The allegations in the Complaint support a
plausible claim that Officer Adkins was motivated by the
content, place, and manner of Linnemann's anti-abortion protest
materials when he threw them into the street.

Accordingly, the Court shall not dismiss Linnemann's First
Amendment retaliation claim (Count II).


    5.    Qualified Immunity For § 1983 Claims

Defendants contend that Officer Adkins is entitled to
qualified immunity because "an objectively reasonable police
officer, relying upon common sense, inference, and deduction ,
could have believed that his 'interaction' with Linnemann did
not run afoul of any constitutional protection."  Defs.' Mot.
Dismiss [Document 8-1] at 10.

The defense of qualified immunity is applicable "unless the
official's conduct violated a clearly established constitutional
right."  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  To be
clearly established, the "contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  The qualified immunity defense requires two inquiries: "whether plaintiffs have alleged facts setting forth valid claims for a deprivation of a constitutional right," and "whether a reasonable officer could have believed that his conduct was lawful."  <u>Williams v. Hansen</u>, 326 F.3d 569, 574 (4th Cir. 2003).

As discussed above, the Defendants are not entitled to dismissal as to Plaintiff's First Amendment retaliation claim. With respect to the second prong of the qualified immunity inquiry, the allegations in the Complaint do not permit the Court to accept Defendants' version of the incident; that is a police officer who merely directed a protester to move his vehicle and materials off of school property and then assisted the protester when he failed to do so.  There are allegations in the Complaint that Officer Adkins, in addition to falsely accusing Linnemann of a parking violation, hurled anti-abortion materials from a public sidewalk into a public street.

While, ultimately, Officer Adkins's may be held entitled to qualified immunity, he is not so entitled at the present stage of the case.

E.    Municipal Liability Claim (Count IV)

In Count IV of the Complaint, Linnemann asserts that the City of Aberdeen is directly liable to him "for its policy or custom of deliberate indifference to First and Fourth Amendment rights."  Compl. ¶¶ 36-39.  Defendants assert the Complaint contains only conclusory and speculative allegations insufficient to satisfy the requisite pleading standards.

        1.    Legal Principles

A "municipality cannot be held liable [under § 1983] solely because it employs a tortfeasor."  Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-95 (1978)(emphasis in original).  The liability of a local government arises under § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officials."  Id. at 690-91. Specifically, Monell liability under § 1983 attaches when the policy or custom is "(1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation."  Spell v. McDaniel, 824 F.2d 1380, 1386-87 (4th Cir. 1987) (internal citations omitted).

The existence of a policy or custom may be demonstrated in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).

2.    Adequacy of the Complaint

In order to adequately plead a Monell claim, the Complaint must contain sufficient allegations that an official policy or custom fairly attributable to the City of Aberdeen existed and that this policy proximately caused the First Amendment retaliation complained of by Plaintiff. See Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009) (affirming district court dismissal of Monell claim where complaint failed to make any allegations about the existence of a policy, custom, or practice); McMahon v. Cnty. Comm'rs of Kent Cnty., CIV. JFM-13-490, 2013 WL 2285378, at *3 (D. Md. May 21, 2013) (explaining that although Monell does not impose a heightened pleading

requirement, a complaint must contain adequate allegations of an official policy that is fairly attributable to the deprivation of constitutional rights).  Just as pleading any other matter, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a cause of action.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Linnemann bases his claim that there is a policy or custom solely on the basis of Officer Adkins' alleged misconduct vis-à-vis Linnemann.  In most, if not virtually all, decided cases, courts have held that a municipal custom giving rise to § 1983 liability cannot be established based on a single incident of the unconstitutional activity charged.  See Semple v. City of Moundsville, 195 F.3d 708, 713 (4th Cir. 1999); Spell, 824 F.2d at 1391 (concluding proof of a single constitutional violation by police officers fails to support inference of "municipal policy of deficient training" or "a condoned custom of comparable practices"); Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984).  In a pre Twombly and Iqbal case, the Fourth Circuit concluded that for Monell claims there "is no requirement that [the plaintiff]  . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or

custom and causation." Jordan by Jordan v. Jackson, 15 F.3d
333, 339 (4th Cir. 1994); but see Cook v. Howard, 484 F. App'x
805, 810 (4th Cir. 2012) (unpublished) cert. denied, 133 S. Ct.
1600, 185 L. Ed. 2d 580 (U.S. 2013) (recognizing the effect of
Twombly and Iqbal on pleading § 1983 claims).  The Court is
doubtful that the one deprivation alleged in the Complaint is
sufficient to give rise to a plausible claim of the existence of
an official policy or custom of the City of Aberdeen of
deliberate indifference to First Amendment rights.  Even if that
were not the case, the Complaint is still deficient because it
contains no allegations of even the existence of other
constitutional violations capable of supporting a plausible
claim of policy or custom.

Furthermore, even if the Complaint had contained adequate
allegations of the existence of a "policy or custom" capable of
giving rise to municipal liability, Plaintiff has not alleged
facts presenting a plausible claim that such a policy or custom
was the moving force behind the alleged constitutional violation
at issue.  See Polk Cnty. V. Dodson, 454 U.S. 312, 326 (1981).
Indeed, the Complaint contains factual allegations that Corporal
Swain, Officer Adkins' supervisor, came to the scene after the
sign relocation incident and, thereafter, Linnemann experienced
no further incident involving the police.  Compl. ¶ 23-25.  Such

allegations contradict, rather than support, a claim that the
City of Aberdeen maintained a policy or custom of deliberate
indifference to First Amendment rights.

Accordingly, all claims in Count IV against the City of
Aberdeen shall be dismissed.

F.   Article 24 of the Maryland Declaration of Rights
     (Count V)

In the Complaint, Linnemann asserts a claim under Count V
for a violation of Article 24 of the Maryland Declaration of
Rights.  Article 24 is the Maryland counterpart to the Due
Process clause of the Fourteenth Amendment of the Federal
Constitution and is generally construed in pari materia
therewith.  See Quailes v. State, 452 A.2d 190, 191 (Md. Ct.
Spec. App. 1982); see also Pickett v. Sears, Roebuck & Co., 775
A.2d 1218, 1224 (Md. 2001).  Here, Plaintiff's Fourteenth
Amendment claim is limited to a conduit claim: it is the means
through which the First and Fourth Amendments are applicable to
the States.  There are no allegations in the Complaint capable
of supporting a plausible claim that Defendants violated
Linnemann's state due process rights.  Nor does Linnemann offer
any argument to the contrary in his Opposition.  Accordingly,

all claims in Count V based upon Article 24 of the Maryland
Declaration of Rights are subject to dismissal.


G.    Remaining Issues

        1.    Punitive Damage Request

Linnemann seeks a punitive damage award. Defendants assert
that Maryland law disallows an assessment of punitive damages
against any local government and therefore Linnemann should be
precluded from pursuing such claims against the City of
Aberdeen.  Linnemann has stated that he is seeking punitive
damages only against Officer Adkins, a recovery that is
permitted under both federal and state law.  Defendants do not
address this position in the Reply.

The bottom line is that the Complaint is construed to
present a punitive damage claim only against Officer Adkins.



        2.    Plaintiff's Sua Sponte Summary Judgment Request

In his opposition, Linnemann asserts that if Officer Adkins
fails specifically to deny certain factual allegations contained
in Plaintiff's affidavit, the court should sua sponte grant
summary judgment against Officer Adkins as to liability because
Officer Adkins raised these factual issues by a premature

summary judgment motion. Pl.'s Opp'n [Document 9] at 16. The Court, finding any summary judgment motion in the instant case to be premature due to the absence of any discovery, shall not consider, much less grant, summary judgment <u>sua</u> <u>sponte</u>.[13]

IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1.  Defendants City of Aberdeen's and Cornis (a.k.a. 'J.R.') Adkins' Motion to Dismiss or, alternatively, for Summary Judgment [Document 8] is GRANTED in PART.

2.  All claims in Counts I, III, IV, and V are hereby dismissed.

3.  All claims in Count II remain pending against Defendant Adkins but are dismissed as to Defendant City of Aberdeen.

4.  Plaintiff shall arrange a telephone conference with counsel and the Court to be held prior to July 15, 2013, to discuss the scheduling of further proceedings herein.

SO ORDERED, on <u>Monday, June 24, 2013.</u>

                                        /s/_____ __ _
                                      Marvin J. Garbis
                                 United States District Judge

---

[13]  The unpublished Fourth Circuit decision relied upon by Plaintiff for his suggestion, <u>Amzura Enters., Inc. v. Ratcher</u>, 18 F. App'x 95, 104 (4th Cir. 2001) (per curiam), discusses the notice requirements a district court must provide to the parties when it desires to enter summary judgment <u>sua</u> <u>sponte</u> or grant summary judgment to a nonmoving party who has not filed a cross-summary judgment motion.